**Amy R. WEISSBROD, Plaintiff,**

v.

**HOUSING PART OF THE CIVIL COURT OF THE CITY OF NEW YORK, et al., Defendants.**

**No. 02 CIV. 8627 RMBFM.**

United States District Court,
S.D. New York.

Oct. 23, 2003.

Amy R. Weissbrod, pro se, for Plaintiff.

Benjamin Lee, NYS Attorney General's Office, New York City, for State defendants.

Stephen Levy, Esq., Costello Shea & Gaffney, LLP, New York City, for Defendants Eliot, Cherson and Rappaport, Hertz, Cherson & Rosenthal, P.C.

William A. Goldstein, Esq., Costello, Shea & Gaffney, LLP, New York City, for Defendants Costello, Shea & Gaffney LLP and Stephen Levy.

Pennisi, Daniels & Norelli LLP, Rego Park, NY, for Defendants Hudson Towers, LLP, for defendant.

## ORDER

BERMAN, District Judge.

### I. Background

On or about October 28, 2002, *pro se* plaintiff (herself an attorney) Amy Weissbrod ("Weissbrod" or "Plaintiff") filed a complaint ("Complaint") against some thirteen New York State judicial system entities and individuals, including the Housing

Part of the Civil Court of New York City ("Housing Court"); the Honorable Laurie Lau, New York City Housing Part Judge; the Honorable Fern Fisher, Administrative Judge of the Civil Court; the Honorable Martin Shulman, Administrative Judge of the Civil Court and former Housing Part Judge; the Honorable Ernest Cavallo, Supervising Judge of the Housing Court; the Honorable Bruce Gould, former New York City Housing Party Judge; Jack Baer, Chief Clerk of the Civil Court; Mary Andronaco, Clerk of the Civil Court; Ernest Belzaguy, First Deputy Clerk of the Civil Court; the New York State Commission on Judicial Conduct ("CJC"); Chief Counsel Michael Colodner, Administrator of the New York City Office of Court Administration ("OCA"); Jane Chin, Clerk of OCA; and Marlene Marcada-Wohlers, an employee in the Civil Court's audiotape office ("State Judicial Defendants"). Plaintiff has also sued thirteen additional defendants, including Linda Sears, a transcriber working within the Civil Court as an independent contractor; the LeFrak Organization, Inc.; Hudson Towers Housing, Inc.; Patrick Lynch, Plaintiff's sub-tenant; a number of law firms and lawyers, including Eliot Cherson ("Cherson"), Rappaport, Hertz, Cherson & Rosenthal, P.C. ("RHCR"), Howard Boris, Alfred Pennisi, Pennisi, Daniels & Norelli, Lawrence Pearson ("Pearson"). Steven Levy, and Costello, Shea & Gaffney; and Does I–X (collectively, with State Judicial Defendants, "Defendants"). The Complaint alleged, in seven counts, among other things, that the Defendants violated Plaintiff's First, Fifth and Fourteenth Amendment rights in connection with the events and court proceedings surrounding her 1997 eviction from her apartment at Battery Park City, pursuant to a stipulation Plaintiff entered into on March 21, 1997 ("Stipulation"). *See* Stipulation, dated March 21, 1997 ("[Plaintiff] agrees to vacate and surrender the premises by 1/31/97."). Plaintiff alleges violations of 42 U.S.C. § 1983 and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"). She seeks damages and equitable relief, including the invalidation of the Stipulation.[1]

Also on or about October 28, 2002, Plaintiff filed an Order to Show Cause ("OTSC"), seeking, among other things, transcripts and audiotapes of Plaintiff's

---

1. Plaintiff has been involved in numerous state court proceedings, including, without limitation, the following: On or about August 27, 1997, Plaintiff brought an order to show cause before the Housing Court to enforce compliance with the Stipulation. Report at 5. In October 1997, Plaintiff brought an action in New York State Supreme Court against Defendants Hudson, LeFrak, Cherson, RHCR, and Lynch, alleging fraudulent conduct regarding the Stipulation and seeking the return of her furniture. Report at 5–6. On April 24, 2001, the Appellate Division, First Department, affirmed Justice Abdus–Salaam's dismissal orders. *Gurvey v. Lynch*, 282 A.D.2d 367, 723 N.Y.S.2d 652 (N.Y.App.Div. 2001); Report at 7. In June 1998, Plaintiff moved in New York City Civil Court to vacate the Stipulation. Report at 5–6. Judge Shulman's order denying Plaintiff's motion was affirmed by the Supreme Court, Appellate Term on March 28, 2002. *Hudson Tower Hous. Co., Inc. v. Weissbrod*, Nos. 02–216 & 02–017, 2002 WL 538468 (N.Y.App.Div.2002); Report at 7. In August 2000, Plaintiff filed another motion to vacate the Stipulation. In her order denying Plaintiff's motion, Defendant Judge Lau scheduled a sanctions hearing against Plaintiff and her attorney. Stuart Dankberg. Report at 8. On February 10, 2003, following a hearing, Judge Schneider assessed sanctions against both Plaintiff and Mr. Dankberg. Report at 9. On January 15, 2002, Plaintiff filed a motion in State Supreme Court seeking leave to reassert claims against Cherson and RHCR; this motion was denied by Justice Harold Tompkins on April 17, 2002, who also dismissed claims against Lunch and directed the imposition of sanctions against Plaintiff. Report at 8–9.

various state court proceedings, requesting the vacatur of several state court decisions and a stay of further state court proceedings pending the outcome of this case, and requesting preliminary determinations that Plaintiff's constitutional rights had been violated by Defendants. OTSC at 1–5.

On November 14, 2002, the Office of the New York State Attorney General submitted a letter on behalf of the State Judicial Defendants ("AG's Letter" or "Motion to Dismiss") in opposition to Plaintiff's October 28, 2002 Order to Show Cause, arguing that the Complaint should be dismissed, because "(1) state defendants are entitled to absolute judicial immunity; (2) this Court lacks subject matter jurisdiction over this action based on the *Rooker–Feldman* doctrine; and (3) plaintiff's complaint is barred by res judicata/collateral estoppel." AG's Letter at 1. On or about November 15, 2002, Pearson submitted a letter ("Pearson Letter") joining in the AG's Letter and also arguing that the claims against him should be dismissed because "if the District Court dismisses the federal claims, it is empowered to dismiss all claims (pendent) upon which its original jurisdiction was based." Pearson Letter at 1. On or about November 26, 2002, Costello, Shea & Gaffney submitted a letter ("CSG Letter I") on behalf of themselves and Steven Levy, also joining in the AG's Letter and arguing that they were not "involved in the underlying litigation, i.e. the court proceeding which resulted in the Stipulation of Settlement. The remaining allegations .... do not ... provide a basis for jurisdiction." CSG Letter I, dated November 26, 2002. On or about November 29, 2002, Costello, Shea & Gaffney submitted another letter ("CSG Letter II") on behalf of Cherson and RHCR, who "hereby adopt and join in the arguments set forth in the letter motion to dismiss." CSG Letter II, dated November 29, 2002.

Following a hearing on November 19, 2002, this Court denied Plaintiff's OTSC requesting interim relief. *See* Transcript of Nov. 19, 2002 Proceedings at 6 (Plaintiff "would [not] demonstrate that there's a likelihood of prevailing on the merits ultimately or irreparable harm."). On or about January 8, 2003. Plaintiff opposed State Judicial Defendants' motion to dismiss and filed a cross-motion to add Jonathan Lippman, Chief Administrative Judge of the New York State Unified Court System, as a defendant and to add another claim against Defendant Patrick Lynch.

On August 12, 2003, Magistrate Judge Frank Maas, to whom this matter had been referred, issued a thoughtful report and recommendation ("Report"), recommending that the "State [Judicial] defendants' motion be granted and the complaint be dismissed as against all of the defendants;" that Plaintiff's "cross-motion be denied as moot;" and that Plaintiff "be cautioned that any continuing effort to federalize state law claims which have been repeatedly rejected by the New York courts may result in the imposition of sanctions." Report at 3. Judge Maas determined that "[v]irtually all of Weissbrod's myriad claims are plainly precluded by the *Rooker–Feldman* doctrine;" Report at 18; "Weissbrod's claims against the State [Judicial] defendants are also subject to dismissal pursuant to the Eleventh Amendment;" Report at 20; "Weissbrod's claims against the Housing Court judges and administrative judges also fail because they are entitled to absolute judicial immunity;" Report at 21; and that "all of the state claims over which this Court potentially might have had original jurisdiction are [also] subject to dismissal .... The Court should therefore decline to exercise jurisdiction over Weissbrod's remaining

state law claims." Report at 23.[2]

The Report advised the parties that, pursuant to 28 U.S.C. § 636(b)(1) and Rules 6(a), 6(c) and 72(b) of the Federal Rules of Civil Procedure, "if they have objections to this Report and Recommendation, they must, within ten (10) days from today, make them in writing." Report at 24. On August 19, 2003, this Court granted Plaintiff's request to extend her deadline to submit objections to September 18, 2003; in a letter dated August 22, 2003, Plaintiff informed the Court that she intended to file an amended complaint as of right and repeated her arguments opposing the Motion to Dismiss. Plaintiff submitted objections on or about September 18, 2003 ("Plaintiff's Objections"), accompanied by a Memorandum of Law to Plaintiff's Objections to Magistrate's Report and Recommendations, and an addendum letter on or about September 29, 2003 ("Plaintiff's Addendum"), elaborating on her Objections. **For the reasons set forth below, the Court adopts the Report in its entirety.**

## II. Standard of Review

▬ The Court may adopt those portions of a magistrate's report to which no objections have been made and which are not facially erroneous. *See* Fed.R.Civ.P. 72(b); *see, e.g., Letizia v. Walker,* No. 97 Civ. 0333, 1998 WL 567840, at *1 (W.D.N.Y. Aug. 27, 1998); *Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991); *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985). The Court conducts a *de novo* review of those portions of a magistrate's report to which objections have been made. *See, e.g., Letizia,* 1998 WL 567840, at *1; *Pizarro,* 776 F.Supp. at 817. Once objections have been received, a district court judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate. *See, e.g., DeLuca v. Lord,* 858 F.Supp. 1330, 1345 (S.D.N.Y.1994); *Walker v. Hood,* 679 F.Supp. 372, 374 (S.D.N.Y. 1988). Where, as here, the plaintiff is proceeding *pro se,* "leniency is generally accorded." *Bey v. Human Res. Admin.,* No. 97 Civ. 6616, 1999 WL 31122, at *2 (E.D.N.Y. Jan.12, 1999).

## III. Analysis

The facts as set forth in the Report are incorporated herein unless otherwise noted.

The Court has conducted a *de novo* review of, among other things, the record, the Report, Plaintiff's Objections, and applicable legal authorities, and concludes that Magistrate Judge Maas's legal and factual determinations are supported by the record and the law in all material respects. Plaintiff's Objections, which raise substantially the same arguments that were raised before Magistrate Judge Maas, do not provide a basis for departing from the Report's recommendations.[3]

## I. Plaintiff's Federal Claims

*Rooker–Feldman*

▬ " '[I]nferior federal courts have no subject matter jurisdiction over cases

---

**2.** On August 13, 2003, Magistrate Judge Maas issued an amendment to his Report ("Amendment"), determining that there was no basis to Plaintiff's claim that Article 6, Section 22 of the New York State Constitution "denies equal protection to Housing Court litigants because housing court judges are not considered part of the 'unified court system.' " Amendment at 1.

**3.** As to any portions of the Report to which no objections have been made, the Court concludes that the Report is not clearly erroneous. *See Pizarro,* 776 F.Supp. at 817. Any Objections that are not specifically discussed in this Order have been considered and rejected.

that effectively seek review of judgments of state courts and ... federal review, if any, can occur only by way of a certiorari petition to the Supreme Court.'" *Santini v. Connecticut Hazardous Waste Mgmt. Serv.*, 342 F.3d 118, 126 (2d Cir.2003) (citation omitted). "*Rooker–Feldman* bars those claims that were adjudicated in a prior state court action, as well as those claims that are 'inextricably intertwined' with the state court judgment.... We have held that 'inextricably intertwined' means, at a minimum, that where a federal plaintiff has an opportunity to litigate a claim in a state proceeding ... subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion." *Id.* (citations omitted). Among other things, Plaintiff's applications "would require this Court to set aside the state court's determination, which is plainly beyond its jurisdiction." Report at 18; *Santini*, 342 F.3d at 126. Additionally, "to the extent that Weissbrod seeks to recast her arguments in constitutional or federal statutory terms, she plainly is asserting claims which could have been raised in state court but were not." Report at 19; *see McAllan v. Malatzky*, No. 97 Civ. 8291, 1998 WL 24369, at *2–3 (S.D.N.Y. Jan.22, 1998) ("Where, as here, the complaint's constitutional claim appears to be nothing more than a state claim recloaked in constitutional garb, the constitutional claim is insufficient to confer jurisdiction." (citation omitted)).

*Eleventh Amendment*

■ Magistrate Judge Maas also correctly determined that Plaintiff's claims against State Judicial Defendants are "subject to dismissal pursuant to the Eleventh Amendment." Report at 20. "[T]he Eleventh Amendment renders a state or its agency immune from suit in federal court, where, as here, there has been no consent to be sued." Report at 20–21; *see also Papasan v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) ("'[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.' ... This bar exists whether the relief sought is legal or equitable." (citation omitted)); *Berman Enters., Inc. v. Jorling*, 3 F.3d 602, 606 (2d Cir.1993) ("To the extent that the suit [seeks] damages from defendants in their official capacities, dismissal under the eleventh amendment was proper because a suit against a state official in his official capacity is, in effect, a suit against the state itself, which is barred."); *Saint–Fleur v. City of New York*, 99 Civ. 10433, 2000 WL 280328, at *2 (S.D.N.Y. Mar.14, 2000) ("The State and its agencies are protected by Eleventh Amendment immunity 'whether the relief sought is legal or equitable.'" (citation omitted)).

*Judicial Immunity*

■ Magistrate Judge Maas also correctly determined that Plaintiff's "claims against the Housing Court judges and administrative judges also fail because they are entitled to absolute judicial immunity." Report at 21. "[J]udges are absolutely immune from suits such as this one which allege that they performed their judicial functions improperly or inadequately." Report at 21; *see Montero v. Travis*, 171 F.3d 757, 760 (2d Cir.1999) ("It is ... well established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages."); *Sundwall v. Leuba*, 00 Civ. 1309, 2001 WL 58834, at *4 (D.Conn. Jan.23, 2001) ("[A] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural

errors.... [A] judge is immune only for actions performed in his judicial capacity." (internal quotations and citations omitted)), *aff'd by summary order*, 28 Fed. Appx. 11, 2002 WL 10401 (2d Cir.2001). The conduct challenged here "was clearly judicial in nature ..." Report at 22; *see also* Federal Courts Improvement Act of 1996, § 309(c), Pub.L. No. 104–317, 110 Stat. 3847, 3853 (1996).

## II. State Law Claims

▮ Magistrate Judge Maas correctly determined that, because "all of the claims over which this Court potentially might have had original jurisdiction are subject to dismissal," the Court should "decline to exercise supplemental jurisdiction" over Plaintiff's remaining state law claims. Report at 23; *see* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... (3) the district court has dismissed all claims over which it has original jurisdiction."). The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## III. Failure to Serve Other Defendants

Magistrate Judge Maas found that, because "there is no evidence that Weissbrod has successfully served defendant Lynch or any of the 'Doe' defendants, the complaint should also be dismissed against them." Report at 24; *see also* Fed. R.Civ.P. 4(m). In her Objections, Plaintiff states that "in January 2003, defendant[ ] Lynch ... was ... served pursuant to Rule 4 of the Federal Rules of Civil Procedure pursuant to Magistrate's November, 2002 order with affidavits of service duly filed at the Pro Se window." Plaintiff's Objections at 10. The Court's docket does not reflect that proof of service was filed with the Clerk of Court. In any case, Plaintiff's claims against Defendant Lynch

and the "Doe" Defendants are subject to dismissal for the reasons enumerated above.

## IV. Conclusion & Order

For the reasons stated herein and therein, the Report [19, 20] is adopted in its entirety. Defendants' motion to dismiss is granted and Plaintiff's cross-motion and Order to Show Cause are denied. The case is dismissed is its entirety.

The Clerk of Court is respectfully requested to close this case.